UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| JACOB MONTANA MILLS, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 5: 23-187-DCR |
| ) | |
| V. ) | |
| ) | |
| KILOLO KIJAKAZI, Acting ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, ) | **AND ORDER** |
| ) | |
| Defendant. ) | |

*** *** *** ***

Plaintiff Jacob Montana Mills has filed a *pro se* appeal of the Commissioner of Social Security's denial of his applications for supplemental security income and disability insurance benefits. Mills contends that the Administrative Law Judge ("ALJ") assigned to his case made legal errors warranting reversal of the Commissioner's decision. Specifically, he contends that the ALJ erroneously relied on a previous unfavorable decision and that the ALJ's decision is otherwise unsupported by substantial evidence. Contrary to these arguments, the record reflects that the ALJ reasonably relied on the medical evidence of record and properly applied the rules of law. Therefore, the Commissioner's decision will be affirmed.

I.

Mills filed the instant applications for supplemental security income ("SSI") and disability insurance benefits ("DIB") on September 21, 2020. [*See* Administrative Transcript 194-204, hereafter, "Tr."] His claim was denied initially (May 4, 2021) and upon reconsideration (July 20, 2021). [Tr. 118-129] ALJ Robert Bowling held an administrative hearing on December 1, 2021, and issued a written opinion denying benefits on December 16,

2021. [Tr. 30-49; 15-26] The Appeals Council denied Mills' request for review on January 17, 2023, making this matter ripe for judicial review. *See* Tr. 5-7; 42 U.S.C. § 405(g).

## II.

Mills was 39 years old at the time of the ALJ's decision. He has graduated from high school and completed several years of college. [Tr. 111] Further, Mills completed two years of vocational training in carpentry while in high school and previously worked as a building laborer. [Tr. 224] Mills was involved in a motor vehicle accident in October 2014, suffering multiple facial fractures and a subdural hematoma requiring bifrontal craniotomies. [Tr. Tr. 318] Since then, he has complained of various chronic problems including headaches and vision disturbances. Mills previously applied for disability benefits, which resulted in an unfavorable decision on May 14, 2018.

Mills again alleges that he is unable to work due to the problems arising from the 2014 motor vehicle accident.[1] [Tr. 194-202] His medical and other impairments include: traumatic brain injury; dizziness; blurry or double vision; concentration problems; difficulty finding words; and memory problems. [Tr. 223] Mills last maintained gainful employment in October 2014. He advised the ALJ that he made "a couple of efforts" to work after that date, but never made more than $1,000.00 per month. [Tr. 38]

At the time of his current application, Mills complained of dizziness, as well as constant facial and right eye pain that was exacerbated by loud noises, bright lights, and reading or

---

[1] The ALJ considered Mills' alleged onset date an implied request to reopen the prior decision, but denied the request, finding no good cause for that request. Accordingly, the relevant period under consideration began the day after the date of the prior decision, May 15, 2018. [Tr. 16]

focusing. [Tr. 239] He was able to prepare light meals and perform household chores, but did so infrequently. [Tr. 232, 251]

Mills' file contains few medical records, which are summarized as follows: Mills established care at Harrodsburg Family Medical Center on October 30, 2019. [Tr. 300] He advised Carol Baker, APRN that he sustained a skull fracture, brain injury, and right eye damage in 2014. Mills reported that he received care at the University of Kentucky Medical Center, but stopped following up because he "felt like he was not getting anywhere." He denied having had a previous primary care provider. Baker ordered a variety of laboratory tests and referred Mills for a neurological consult due to his history of TBI. Baker instructed Mills to return for a follow up appointment in three months, but it is unclear that he complied.

Mills had a telehealth appointment with William Watson, M.D, at the University of Kentucky Neuroscience Institute on August 19, 2020. [Tr. 308] Dr. Watson reviewed Mills' past medical history, including his numerous brain and facial injuries resulting from the October 2014 accident. The physical examination was limited due to the remote nature of the appointment, but Watson noted "normal bulk" with respect to Mills' motor exam and remarked that Mills could arise from a chair without using the sides. [Tr. 313] Watson prescribed topiramate for Mills' headaches and instructed him to return in four to six months. [Tr. 313]

Mills next telehealth appointment with Baker occurred on September 29, 2020. At that time, he complained of an ingrown hair he believed may have been infected. He also advised Baker that he had hit his head on a cabinet and had a sore on his forehead. [Tr. 303] Baker prescribed oral antibiotics and a topical ointment. She did not believe Mills had suffered a concussion based on his reported history and advised him to monitor for any changes in his condition. [Tr. 305]

Agency consultant Timothy Gregg, M.D., reviewed Mills' file on November 27, 2020, and reported that the medical evidence subsequent to the May 2018 decision did not materially impact the ALJ's prior decision. [Tr. 78-81] He opined that Mills could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds. Gregg believed Mills could sit and stand and/or walk about six hours in an eight-hour workday. He reported that Mills could occasionally kneel, stoop, crouch, crawl, and climb ramps or stairs, but that he could never climb ladders, ramps, or scaffolds. Gregg also commented that Mills should avoid all exposure to hazards such as heights and machinery.

Consultant Christine Booth, M.D., reviewed the record on May 2, 2021, upon Mills' request for reconsideration. She echoed Gregg's findings and concluded that Mills did not have a new allegation or worsening of impairments. [Tr. 109]

Agency consultant Dan Vandivier, Ph.D., reviewed the file on December 24, 2020. He reported that one or more of Mills' medically determinable impairments would be expected to produce his complained of symptoms, but that the reported intensity, persistence, and functionally limiting effects were not substantiated by the objective medical evidence. [Tr. 77] Vandivier concluded that Mills could understand, remember, and carry out instructions to perform simple and routine tasks; sustain concentration, attention, and pace to complete simple tasks; respond appropriately to others to complete simple tasks in a task-oriented nonpublic work setting; and deal with changes in a work setting to make simple work-related decisions. [Tr. 81] Consultant Jane F. Brake, Ph.D., reviewed the case on reconsideration on April 30, 2021, and concluded that the evidence did not present any new and material differences relative to the prior ALJ decision. [Tr. 108]

After considering all the evidence, the ALJ determined that Mills had the following severe impairments: anxiety; history of fracture of the right orbit with diminished peripheral vision in the right eye; traumatic brain injury; neurocognitive disorders; and depressive, bipolar and related disorders. [Tr. 18] Considering the limitations caused by these impairments, the ALJ concluded that Mills had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) as follows:

> lift and carry 20 pounds occasionally and ten pounds frequently; stand and/or walk six hours out of an eight-hour workday; sit six hours out of an eight-hour workday; push and pull as much as he can lift and carry; occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds; and occasionally stoop, kneel, crouch, and crawl. The claimant is able to avoid most workplace hazards but should do no work at unprotected heights or around moving, mechanical parts. The claimant is unable to perform work that requires peripheral vision on the right side. He should also avoid concentrated exposure to vibrations and extreme temperatures. The claimant can understand, remember, and carry out instructions to perform simple and routine tasks; sustain concentration, attention, and pace to complete simple tasks; respond appropriately to others to complete simple tasks in a task-oriented nonpublic work setting; and deal with changes in a work setting to make simple work-related decisions.[2]

[Tr. 21] Based on the testimony of a qualified vocational expert, the ALJ concluded that jobs exist in the national economy for an individual with Mills' age, education, work experience, and RFC and that Mills had not been under a disability through the date of the ALJ's decision. [Tr. 25]

### III.

A "disability" under the Social Security Act is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental

---

[2]   The ALJ adopted the RFC finding from May 14, 2018, per *Drummond v. Comm. of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997), concluding that the limited new evidence did not materially alter the assessment.

impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)).  A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)).  If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant first must demonstrate that he is not engaged in substantial gainful employment at the time of the disability application.  20 C.F.R. §§ 404.1520(b), 416.920(b).  Second, the claimant must show that he suffers from a severe impairment or a combination of impairments.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience.  20 C.F.R. §§ 404.1520(d), 416.920(d).  Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination of the disability based on medical evaluations and current work activity, the Commissioner will review the claimant's RFC and relevant past work to determine whether he can perform his past work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If he can, he is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).

Under the fifth step of the analysis, if the claimant's impairments prevent him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work.  If he cannot perform other work, the Commissioner will find the claimant disabled.  20 C.F.R. §§ 404.1520(g), 416.920(g).

"The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

This Court's review is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ employed the proper legal standards in reaching his decision. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

The plaintiff's filings are construed liberally given his *pro se* status. *See Parrella v. Comm. of Soc. Sec.*, 2019 WL 1970532, at *1 (S.D. Ohio May 3, 2019) (citing *Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985)). That said, *pro se* litigants still must raise the issues they wish to present, attempt to develop arguments, and follow the same procedural rules that govern other litigants. *See Wilson v. Comcast Cable Comms. Mgmt., LLC*, 2016 WL 11782544, at *1 (6th Cir. Mar. 18, 2016) (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)); *Stadford v. Social Security*, 2023 WL 3978326, at *1 (N.D. Ohio June 13, 2023).

## IV.

Mills spends a significant portion of his brief attacking the ALJ decision rendered on May 14, 2018. For example, he criticizes the ALJ's failure to credit the opinions of Drs. Beard and Fishkoff, but these opinions do not appear in the present administrative record. And the time to appeal the 2018 decision has long passed. *See* 42 U.S.C. § 405(g); *Tracy M.D. v.*

*Comm. of Soc. Sec.*, 2023 WL 1857801, at *5 (S.D. Ohio Feb. 9, 2023) (observing that prior ALJ's decision was final and not before the court on appeal). Further, ALJ Bowling's decision not to reopen the prior application is not subject to judicial review. *See Califano v. Sanders*, 430 U.S. 99, 107-08 (1977).

Mills also contends that the ALJ erred in failing to conclude that he has an impairment or combination of impairments that meets or medically equals a listing. He argues that the ALJ failed to consider crucial evidence; namely, the results from a neurocognitive function test performed in September 2015. [Record No. 10, p. 3] But test results from 2015 would have been germane to Mills' *prior* application. *See Ruth v. Astrue*, 2011 WL 22244532 (E.D. Tenn. May 2, 2011) (citing *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 687 (6th Cir. 1992)). Regardless, as noted by consultants Vandivier and Brake, the testing was "deemed contaminated by indications of sub-optimal efforts." [Tr. 314] The ALJ did not err by failing to discuss this remote evidence, which was not supported by any more recent medical records.

Mills argues that ALJ Bowling improperly adopted the prior ALJ's findings. However, there is no indication that ALJ Bowling adopted the prior decision wholesale without giving the application a fresh review as required under *Earley v. Commissioner of Social Security*, 893 F.3d 929 (6th Cir. 2018). Rather, the ALJ properly reviewed the new evidence that Mills submitted and determined that it did not materially alter the previous decision. *See id.*

Mills' arguments are largely based on his subjective complaints of pain and other impairments. But the ALJ considered Mills' subjective complaints and found that his statements concerning their intensity, persistence, and limiting effects were not entirely consistent with the evidence of record. *See* 20 C.F.R. §§ 404.1529, 416.929. [Tr. 21] For example, Mills claimed that he could only walk a few feet at a time and lost his balance even

when sitting. The ALJ observed that despite these allegations, he reported that lived alone, drove multiple times per week, and was able to go shopping. [Tr. 23] Additionally, despite these problems allegedly worsening since October 2014, he apparently went several years without seeing a doctor.

The ALJ's decision is based on substantial evidence. He reasonably relied on the opinions of state agency medical and psychological consultants, who adopted the limitations from the prior decision. *See Brown v. Saul*, 2020 WL 5569594, at *6 (N.D. Ohio Sept. 17, 2020) (observing that "an RFC determination that is based upon the medical opinions of State Agency consultants is generally supported by substantial evidence") (collecting cases). "[W]hen a plaintiff previously has been adjudicated not disabled, [he] must show that [his] condition so worsened in comparison to [his] earlier condition that [he] was unable to perform substantial gainful activity." *Mixon v. Colvin*, 12 F. Supp. 3d 1052, 1062 (S.D. Ohio 2013) (quoting *Casey v. Sec'y of H.H.S.*, 987 F.2d 1230, 1232-33 (6th Cir. 1993)). It is the claimant's burden to present evidence showing that his symptoms have changed significantly since the time of the Commissioner's prior determination. *Id.*

Mills has not provided any evidence, other than his subjective complaints, indicating that his condition has worsened since the Commissioner's previous decision. The ALJ properly evaluated these complaints and determined that they were not entirely consistent with the objective medical evidence, including Mills' very limited medical treatment and his reported activities and abilities. [Tr. 22] To the extent Mills cites evidence that is not in the record, the ALJ cannot be faulted for failing to consider facts that were not before him.[3] *See*

---

[3] Mills alleges, apparently for the first time, that "Dr. Curtis, one of [his] doctors, informed [him] that if after a year of [his] initial surgeries, [his] dizziness and overall poor feeling still

*Montecalvo v. Comm. of Soc. Sec.*, 695 F. App'x 124, 127 (6th Cir. 2017) (observing that the plaintiff's burden includes "supplying medical evidence that substantiates the claim of disability").

### V.

Based on the foregoing analysis, it is hereby

**ORDERED** that the plaintiff's motion to reverse the Commissioner's decision or, in the alternative, to remand for further proceedings [Record No. 10] is **DENIED**.

Dated: November 21, 2023.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky

---

existed without improvement, that it would be something [he] would have for the rest of [his] life." [Record No. 10, p. 4]  He further contends that he has been diagnosed with post traumatic concussion disorder and that medications have not improved his symptoms.  *Id.*